UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**Judge Berman**

ANTONIA HERNANDEZ,                    :          Civil Action No.

                      Plaintiff,      :

        v.                            :          08   CV   2507

UNITED WIRE, METAL AND MACHINE        :          **VERIFIED COMPLAINT**
PENSION FUND, HARVEY MORGAN as the    :
ADMINISTRATOR of the UNITED WIRE,     :
METAL AND MACHINE PENSION FUND, and   :
the TRUSTEES of the UNITED WIRE, METAL :
AND MACHINE PENSION FUND,             :

                      Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MAR 12 2008
U.S.D.C. ......N.Y.
CASHIERS

        Plaintiff Antonia Hernandez, by and through her attorneys Milbank, Tweed, Hadley &

McCloy LLP and Gary Stone, of counsel to John C. Gray, South Brooklyn Legal Services,

alleges as follows:

**NATURE OF THE ACTION**

        1.      Plaintiff brings this action to recover benefits to which she is entitled pursuant to

the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*,

and the governing documents of the United Wire, Metal and Machine Pension Fund (the "Plan").

        2.      In violation of their fiduciary duties and legal responsibilities under ERISA and

the Plan's governing documents, Defendants made excessive payments of pension benefits to

Plaintiff's husband during his lifetime and paid the death benefit relating to his pension to a

beneficiary other than Plaintiff.  In clear contravention of Section 205 of ERISA, 29 U.S.C. §

1055, and the Plan's governing documents, Defendants made these payments without Plaintiff's

knowledge and without her consent.

3.      Furthermore, following Plaintiff's husband's death in August 2005, Defendants wrongfully denied Plaintiff's claim for benefits.  When Plaintiff brought this error to Defendants' attention, they continued to deny her claim notwithstanding documentary and other evidence demonstrating that Plaintiff is entitled to benefits under ERISA and the Plan's governing documents.

4.      As a result of Defendants' unlawful actions, Plaintiff, a widow whose sole source of income is Social Security widow's benefits, has suffered and continues to suffer serious financial harm.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), which vests district courts with jurisdiction over actions concerning employee benefit plans subject to ERISA.

6.      In addition, this Court has jurisdiction over this action pursuant to 28 U.S.C § 1331, which vests district courts with jurisdiction over actions arising under the laws of the United States of America, including ERISA.

7.      The Southern District of New York is an appropriate venue under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), because the Plan is administered in this District, Plaintiff resides in this District, and Defendants' wrongful denial of Plaintiff's claim for benefits occurred in this District.

8.      Plaintiff has exhausted the avenues for administrative review of Defendants' denial of her claim for benefits under Section 503 of ERISA, 29 U.S.C. § 1133.

## PARTIES

9.      Plaintiff Antonia Hernandez resides at 101 West 165th Street in Bronx County, New York.  Plaintiff is the widow of the late Juan Hernandez, who was a member of Teamsters Local 810 and a vested participant in the Plan.

10.     Named as Defendants are (a) the Plan, (b) Harvey Morgan, the Administrator of the Plan, and (c) the Trustees of the Plan.

11.     The Plan is a tax-qualified, multi-employer pension plan that was established as a result of collective bargaining agreements between Teamsters Local 810 and participating employers.  The Plan's principal offices are located at 10 East 15th Street in New York County, New York.

12.     On information and belief, the Plan has enjoyed and continues to enjoy significant tax advantages resulting from Defendants' claimed adherence to all of the requirements of ERISA, including the requirement that the Plan be administered in accordance with federal law and the terms of the Plan's governing documents and in the sole interest of the Plan's participants and beneficiaries.

## ERISA AND THE TERMS OF THE PLAN

13.     In the Retirement Equity Act of 1984, Pub. L. 98-397, Congress amended ERISA to provide additional protections to dependent spouses of employees covered by pension plans.

14.     Among the additional protections provided by the Retirement Equity Act is the requirement, set forth in Section 205(a)(1) of ERISA, 29 U.S.C. § 1055(a)(1), that all ERISA-qualified pension plans pay accrued benefits to vested married participants in the form of qualified joint and survivor annuities ("QJSA").  A QJSA provides a lifetime income to the

participant and, upon the participant's death, continues to provide benefits to his surviving spouse equal to at least 50% of the benefits that had been payable to the participant.

15.     A married participant may waive the QJSA form of benefits and designate an alternative beneficiary *only* with his spouse's written consent.  Such consent must include the spouse's acknowledgement that she understands that she is waiving her right to survivor benefits and must be witnessed by either a plan representative or a notary public.  ERISA § 205(c)(1) & (2), 29 U.S.C. § 1055(c)(1) & (2).

16.     The QJSA form of benefits and the requirement of written spousal consent for waiver of the QJSA are mandatory for all defined benefit pension plans.  ERISA § 205(b)(1)(A), 29 U.S.C. § 1055(B)(1)(A).

17.     Consistent with Section 205, the Plan's governing documents provide for payment of accrued benefits to married participants and their spouses in the form of a QJSA.  *See* Summary Plan Description at 17, attached as Exhibit A.

18.     Under the Plan, a married participant may waive the QJSA form of benefits and elect to receive his pension benefits in the form of a "36 Certain Pension"; however, consistent with Section 205(c), the participant's spouse must consent in writing to the decision to waive the QJSA form of benefits and the election of a 36 Certain Pension.  *See id.*

19.     A 36 Certain Pension provides the participant a lifetime income with a guaranteed minimum of 36 monthly payments.  If the participant dies before receiving 36 monthly payments, the participant's designated beneficiary receives the remainder of the 36 payments.  *See id.*  As such, a 36 Certain Pension results in the participant receiving greater monthly payments during his lifetime, but it caps the number of payments the Plan must make to the participant's designated beneficiary following the participant's death.

20. The Plan also provides for payment of a "lump sum" death benefit upon a participant's death. *See id.* at 20.

21. Consistent with Section 205, the Plan's governing documents require that the death benefit be paid to the participant's spouse unless the spouse has consented in writing to the participant's designation of another beneficiary. *See id.*

## STATEMENT OF FACTS

22. Plaintiff and Juan Hernandez were married in Puerto Rico on November 13, 1965.

23. Although Plaintiff and Mr. Hernandez separated in 1976, they never divorced and remained married until Mr. Hernandez's death in August 2005.

24. The New York State Department of Health has confirmed in writing that its files contain no record of divorce or dissolution of Plaintiff's marriage to Mr. Hernandez.

25. The Social Security Administration has determined that Plaintiff, as Mr. Hernandez's spouse at the time of his death, is entitled to receive Social Security benefits relating to his employment.

26. Mr. Hernandez, a welder, was a member of Teamsters Local 810 and a vested participant in the Plan.

27. On information and belief, Mr. Hernandez represented on IRS Forms W-4, documents submitted to the Social Security Administration, and other official documents that he was married to Plaintiff.

28. On March 8, 1989, without Plaintiff's knowledge, Mr. Hernandez signed and submitted to the Plan a document falsely stating that he was not married. Upon receiving the document, the Plan allowed Mr. Hernandez to elect to receive his pension benefits in the form of a 36 Certain Pension.

29. On information and belief, the Plan did not request a certificate of divorce, review Mr. Hernandez's Forms W-4, or take any other action to confirm the truth of Mr. Hernandez's representation that he was not married.

30. Also on March 8, 1989, Mr. Hernandez, without Plaintiff's knowledge, submitted to the Plan a document purporting to designate Lydia Vasquez (then known as Lydia LaSalle) as his beneficiary for purposes of receiving the death benefit and any pension benefits due and payable to him pursuant to the Plan at the time of his death.

31. At all times prior to Mr. Hernandez's death, Plaintiff was unaware that Mr. Hernandez had purported to elect a 36 Certain Pension and designate Ms. Vasquez as his beneficiary under the Plan. Plaintiff never waived her rights as Mr. Hernandez's spouse to survivor benefits under ERISA and the Plan's governing documents. Nor did Plaintiff consent to Mr. Hernandez's election of a 36 Certain Pension or the designation of Ms. Vasquez as Mr. Hernandez's beneficiary under the Plan.

32. Mr. Hernandez retired on April 1, 1989, at which time he began to receive monthly benefit payments from the Plan of $294.00. On information and belief, these payments were made pursuant to a 36 Certain Pension and were greater than the payments Mr. Hernandez would have received pursuant to a QJSA.

33. Mr. Hernandez died on August 16, 2005.

34. The death certificate issued by the New York City Department of Health and Mental Hygiene incorrectly states that Mr. Hernandez was born on January 25, 1914. Mr. Hernandez's correct date of birth, December 23, 1928, is shown on the marriage certificate on record with the Puerto Rico Department of Health.

35.    The death certificate also incorrectly states that Mr. Hernandez was divorced at the time of his death.

36.    On November 5, 2005, without Plaintiff's knowledge, the Plan distributed a check to Ms. Vasquez in the amount of $3,500.00, representing the death benefit attributable to Mr. Hernandez. Because Mr. Hernandez received more than 36 monthly payments of pension benefits during his lifetime, the Plan made no additional payments of pension benefits to Ms. Vasquez.

37.    In December 2005, Plaintiff, acting through counsel, contacted the Plan to state her claim to pension and death benefits relating to Mr. Hernandez's participation in the Plan.

38.    By letter dated February 22, 2006, Harvey Morgan, in his capacity as Administrator of the Plan, informed Plaintiff that the Plan had determined that she is not eligible to receive any benefits relating to Mr. Hernandez's participation in the Plan. Mr. Morgan explained that the Plan had reached this conclusion because (1) Mr. Hernandez's death certificate indicated that he was divorced at the time of his death and (2) Plaintiff was not designated as Mr. Hernandez's beneficiary on Plan documents.

39.    On information and belief, the Plan made no effort to confirm the accuracy of Mr. Hernandez's death certificate or to confirm that Mr. Hernandez's election of a 36 Certain Pension and designation of Ms. Vasquez as his beneficiary under the Plan were made in accordance with the requirements of Section 205(c) of ERISA, 29 U.S.C. § 1055(c), prior to denying Plaintiff's claim for benefits.

40.    Over the course of several months during the spring and summer of 2006, Plaintiff's counsel repeatedly discussed Plaintiff's right to pension and death benefits relating to Mr. Hernandez's participation in the Plan in written and oral correspondence with Mr. Morgan

and Plan counsel. Among other documents establishing Plaintiff's entitlement to those benefits, Plaintiff's counsel submitted (a) a sworn affidavit by Plaintiff stating that she was married to Mr. Hernandez at the time of his death, (b) a marriage certificate from the Puerto Rico Department of Health documenting Plaintiff's marriage to Mr. Hernandez, (c) a letter from the New York State Department of Health certifying that there is no record of divorce or dissolution of Plaintiff's marriage to Mr. Hernandez, and (d) evidence of Plaintiff's efforts to have Mr. Hernandez's death certificate corrected to reflect his proper date of birth and marital status at the time of his death.

41.    Nevertheless, by letter dated September 28, 2006, Mr. Morgan informed Plaintiff that the Plan's Trustees had considered Plaintiff's claim for benefits and determined to affirm the Plan's denial of her claim. Mr. Morgan explained that the Trustees had determined that the information submitted by Plaintiff did not constitute "conclusive evidence" that Plaintiff was married to Mr. Hernandez at the time of his death. Mr. Morgan further explained that the Trustees had determined to rely, instead, on false and unverified statements by Mr. Hernandez in Plan documents and on the inaccurate death certificate.

42.    On information and belief, the Plan's Trustees made no effort to confirm the accuracy of Mr. Hernandez's death certificate or to confirm that Mr. Hernandez's election of a 36 Certain Pension and designation of Ms. Vasquez as his beneficiary under the Plan were made in accordance with the requirements of Section 205(c) of ERISA, 29 U.S.C. § 1055(c), prior to affirming the Plan's denial of Plaintiff's claim for benefits.

43.    Defendants were conflicted in evaluating Plaintiff's claim for benefits since they have an interest in minimizing the number of payments made by the Plan.

44.    Defendants' final determination to deny Plaintiff's claim to pension and death benefits relating to Mr. Hernandez's participation in the Plan exhausted Plaintiff's administrative

remedies under Section 503 of ERISA, 29 U.S.C. § 1133, thereby rendering this claim ripe for judicial review.

## FIRST CLAIM FOR RELIEF

45.    Plaintiff repeats and realleges paragraphs 1 through 44, inclusive, of this complaint.

46.    Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), provides that a plan participant or beneficiary may bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

47.    As the spouse of Mr. Hernandez, a vested plan participant, Plaintiff is entitled to receive pension benefits in the form of a QJSA under Section 205 of ERISA, 29 U.S.C. § 1055, and the Plan's governing documents.

48.    In addition, the Plan's governing documents entitled Plaintiff to receive a death benefit upon Mr. Hernandez's death in August 2005.

49.    In violation of their fiduciary duties and legal responsibilities under ERISA, Defendants improperly denied Plaintiff's claim for these benefits, causing Plaintiff to suffer serious financial harm.

## SECOND CLAIM FOR RELIEF

50.    Plaintiff repeats and realleges paragraphs 1 through 49, inclusive, of this complaint.

51.    Section 502(a)(3)(B) of ERISA, 29 U.S.C. § 1132(a)(3)(B), provides that a plan participant or beneficiary may bring suit to obtain appropriate equitable relief to enforce or redress violations of ERISA or governing plan documents.

52.     Without limitation, Defendants violated ERISA and the Plan's governing plan documents by:

    a.   allowing Mr. Hernandez to waive the QJSA form of benefits and elect to receive a 36 Certain Pension without obtaining Plaintiff's written consent;

    b.   making excessive pension payments to Mr. Hernandez during his lifetime;

    c.   allowing Mr. Hernandez to designate Ms. Vasquez as his beneficiary for purposes of the Plan without obtaining Plaintiff's written consent;

    d.   paying the death benefit relating to Mr. Hernandez to Ms. Vasquez; and

    e.   denying Plaintiff's claim for benefits, notwithstanding documentary and other evidence demonstrating that Plaintiff is entitled to those benefits under ERISA and the Plan's governing documents.

53.     In doing so, Defendants violated their fiduciary duties and legal responsibilities under ERISA and the Plan's governing documents, including their obligation to administer the Plan in the sole interest of the Plan's participants and beneficiaries.

54.     As a result of Defendants' unlawful conduct, Plaintiff has been denied benefits to which she is entitled under ERISA and the Plan's governing documents and has suffered and continues to suffer serious financial harm.

55.     If, for any reason, this Court is unable to grant Plaintiff relief under her first claim, she asks the Court to redress the aforementioned violations pursuant to the equitable powers vested in the Court by Section 502(a)(3) of ERISA by ordering Defendants to reopen and reevaluate Plaintiff's claim in accordance with the requirements of ERISA and the Plan's governing documents.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

a.      Declaring her rights as the spouse of Mr. Hernandez under ERISA and the Plan's governing documents;

b.      Ordering Defendants to pay to Plaintiff all benefits to which she is entitled as the spouse of Mr. Hernandez under ERISA and the Plan's governing documents, with pre- and post-judgment interest thereon, or, alternatively, ordering Defendants to vacate their prior denial of Plaintiff's claim for benefits and reconsider Plaintiff's claim in accordance with the requirements of ERISA and the Plan's governing documents;

c.      Ordering Defendants to pay Plaintiff's reasonable costs, including attorneys' fees[1]; and

d.      Granting such other and further relief as the Court may deem just, equitable, and proper.

---

[1]      Plaintiff's request for attorneys' fees is limited to the fees of Milbank, Tweed, Hadley & McCloy LLP and does not seek recovery of the fees of South Brooklyn Legal Services.

Dated: New York, New York
      March 12, 2008

Respectfully submitted,

Milbank, Tweed, Hadley & McCloy LLP
   David R. Gelfand (DG-1185)
   Andrew W. Robertson (AR-2437)
1 Chase Manhattan Plaza
New York, NY 10005
Tel:    (212) 530-5000
Direct: (212) 530-5494
Fax:   (212) 530-5219

Gary Stone (GS-5563), of counsel to:
South Brooklyn Legal Services
   John C. Gray (JG-9872)
105 Court Street
Brooklyn, NY 11201
Tel:    (718) 237-5500
Direct: (646) 442-3316
Fax:   (718) 855-0733

*Attorneys for Plaintiff*

~~DRAFT   3/29/2008~~
~~Privileged & Confidential~~
~~Attorney Work Product~~

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

ANTONIA HERNANDEZ,                              :        Civil Action No.

       Plaintiff,        :

   v.                                        :

UNITED WIRE, METAL AND MACHINE     :        **VERIFICATION**
PENSION FUND, HARVEY MORGAN as the    :
ADMINISTRATOR of the UNITED WIRE,        :
METAL AND MACHINE PENSION FUND, and    :
the TRUSTEES of the UNITED WIRE, METAL   :
AND MACHINE PENSION FUND,                  :

       Defendants.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK  )
          ) ss.:
COUNTY OF BRONX   )

   I, ANTONIA HERNANDEZ, am Plaintiff in the foregoing action.  Placido D. Perez read

the foregoing complaint and this verification to me in Spanish, and I hereby declare under

penalty of perjury that I know the statements made in the complaint to be true, or where stated to

be based on information and belief, believe them to be true.

Dated: Bronx, New York
   March 5, 2008

               _Antonia Hernandez_
               Antonia Hernandez
               101 West 165th Street
               Bronx, NY 10452

Sworn to before me this 5th day
of ___March___, 2008.

_Jasmin Tirado_

           JASMIN TIRADO
         Notary Public, State of New York
            No. 01TI6040769
           Qualified in Bronx County
        Commission Expires May 1, 20 10

NY2:#4774004v5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ANTONIA HERNANDEZ,                                   :        Civil Action No.
                                                     :
                              Plaintiff,             :
                                                     :
              v.                                     :
                                                     :
UNITED WIRE, METAL AND MACHINE                       :        **AFFIDAVIT**
PENSION FUND, HARVEY MORGAN as the                   :
ADMINISTRATOR of the UNITED WIRE,                    :
METAL AND MACHINE PENSION FUND, and                  :
the TRUSTEES of the UNITED WIRE, METAL               :
AND MACHINE PENSION FUND,                            :
                                                     :
                              Defendants.            :
                                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF BRONX          )

        I, PLACIDO D. PEREZ, am competent in written and spoken English and Spanish.  I

read true and accurate Spanish translations of the complaint in the above-captioned action and

the accompanying verification to Plaintiff Antonia Hernandez and believe she understood them.

Dated: Bronx, New York
       March 5, 2008

                                                    _____
                                                    Placido D. Perez
                                                    101 West 165th Street
                                                    Bronx, New York 10452

Sworn to before me this 5th day
of ___March_____, 2008.

_____

        JASMIN TIRADO
Notary Public, State of New York
        No. 01TI6040769
    Qualified in Bronx County
Commission Expires May 1, 20 10

NY2:#4774004v5

# UNITED WIRE, METAL AND MACHINE PENSION FUND



**Pride and Benefits**

LOCAL 810

United Wire, Metal
and Machine
Pension Fund

10 East 15th Street
New York, NY 10003
(212) 691-4100

## DEAR PARTICIPANT:

We are pleased to provide you with this Summary Plan Description for the United Wire, Metal and Machine Pension Plan (the "Plan"). The Plan document as amended continues to comply with the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and the Internal Revenue Code of 1986, as amended (the "Code"). This booklet presents a summary of valuable information about your pension benefit, including:

- when you can become a participant,
- what the requirements are for eligibility,
- how benefits are determined, and
- when you can lose credit you have earned towards a pension benefit.

The primary purpose of this booklet is to provide you with a general explanation, in non-technical terms, of the most important features of the Plan. It's important that you understand how the Plan works. Therefore, we urge you to read this booklet very carefully.

Please understand that no general explanation can adequately give you all the details of the Plan, and your full rights can be determined only by referring to the full text of the Plan. Since the provisions of this Plan may also apply to members of your immediate family, we suggest and encourage that you read this booklet with them so that they are aware of your pension benefit as well as any survivor benefit to which they may become entitled. If you lose your copy, please feel free to request another copy from the Fund Office, as noted below.

Every effort has been made to provide you with a clear description of the Plan in plain, everyday language. However, certain words and phrases may seem technical to you. If you still have questions after reading this booklet, please contact the Fund Office, at 10 East 15th Street, New York, New York, 10003, telephone number (212) 691-4100.

This booklet does not change or otherwise interpret the terms of official Plan documents, such as the Trust Agreement establishing the Plan, applicable Collective Bargaining Agreements, or the formal Plan document describing in detail the provisions of the Plan. Your rights can be determined only by referring to the full text of these official documents which are available upon your request for your inspection at the Fund Office during normal business hours.

Upon written request to the Fund Office, you may obtain copies of the formal Plan document, the Trust Agreement and other official Plan documents, including applicable Collective Bargaining Agreements. Should you request copies of any of these documents, the Fund Office may charge you a reasonable copying charge. Additionally, upon written request, you may receive a complete list of the Employee and Employer organizations sponsoring the Plan, and information as to whether a particular Employer or union is a sponsor of the Plan (and that sponsor's address).

Sincerely,
Board of Trustees



# INTRODUCTION

The United Wire, Metal and Machine Pension Plan (referred to in this booklet as the "Plan") was established as the result of Collective Bargaining Agreements between Contributing Employers and Local 810, IBT (the "Union"). Copies of these Collective Bargaining Agreements are on file at the Fund Office for your review. The Plan is completely financed by Employer contributions made pursuant to the terms of the existing Collective Bargaining Agreements or other agreements requiring contributions to the Plan. The Pension Fund is a separate trust fund (the Agreement and Declaration of Trust Establishing the United Wire, Metal and Machine Pension Plan, effective as of October 1, 1955 and as thereafter amended) established for the purpose of paying benefits provided under the Plan. The Internal Revenue Service has determined that the Plan is tax-qualified, and that the separate trust is tax-exempt.

The Plan is administered by a Board of Trustees consisting of an equal number of representatives of the Union and of the Contributing Employers. The Trustees, or any of their duly authorized designee(s), reserve the exclusive right, power and authority, in its sole and absolute discretion, to administer, apply and interpret the Plan, the Trust Agreement and any other Plan documents and to decide all matters arising in connection with the operation or administration of the Plan or the Trust (and the investment of Plan assets). Without limiting the generality of the foregoing, the Trustees, or any of their duly authorized designee(s), shall have the sole and absolute discretionary authority to: (1) take all actions and make all decisions with respect to the eligibility for, and the amount of, benefits payable under the Plan; (2) formulate, interpret and apply rules, regulations and policies necessary to administer the Plan in accordance with its terms; (3) decide questions, including legal or factual questions, relating to the calculation and payment of benefits under the Plan; (4) resolve and /or clarify any ambiguities, inconsistencies and omissions arising under the Plan, Trust Agreement or other Plan documents; and (5) process, and approve or deny, benefit claims and rule on any benefit exclusions. All determinations made by the Trustees, or any of their duly authorized designee(s), with respect to any matter arising under the Trust Agreement and any other Plan documents shall be final and binding on all affected Plan Participants (and their beneficiaries).

Please note that no individuals, other than the Trustees, or their duly authorized designee(s), have any authority to interpret the Plan or to make any promises to you about the Plan or your benefits under the Plan.

The rules and regulations of the Plan are set forth in the formal Plan document entitled the United Wire, Metal and Machine Pension Plan, and related documents. This booklet itself has no legal effect. Your rights to benefits will be governed solely under the terms of the official Plan documents (including the Trust Agreement establishing the Plan), as interpreted by the Trustees, or their duly authorized designee(s), in their sole and absolute discretion. The pension to which you are entitled is determined under the terms of the Plan which is in effect at the time you separate from service. This booklet is supplied solely for the purpose of helping you to understand the Plan, not to replace or amend it. To the extent that any of the information contained in this booklet is inconsistent with the official Plan documents, the provisions set forth in the official Plan documents will govern in all cases.

Please be aware that neither this booklet nor the Plan is a contract of employment; they neither guarantee employment with an Employer nor diminish in any way the right of an Employer to terminate the employment of any Employee. Furthermore, the Trustees reserve the right, in their sole and absolute discretion, to amend or modify the Plan from time to time, and to terminate the Plan and the Fund, in whole or in part, at any time and for any reason, in accordance with the procedures set forth in the formal Plan document and the Trust Agreement.

You are covered by the Plan if you are an Employee working under a Collective Bargaining Agreement between your Employer and the Union, or if you are an Employee working under a Participation Agreement with the Plan, either of which provides for contributions to the United Wire, Metal and Machine Pension Plan on your behalf. When this booklet refers to "you," it assumes that you are an Employee covered by the Plan.

As noted above, the Trustees, or any of their duly authorized designee(s), reserve the exclusive right, power and authority, in its sole and absolute discretion, to administer, apply and interpret the Plan, the Trust Agreement and any other Plan documents and to decide all matters arising in connection with the operation or administration of the Plan or the Trust (and the investment of Plan assets), including decisions made in connection with your benefits application. All determinations made by the Trustees, or any of their duly authorized designee(s), with respect to any matter arising under the Plan, the Trust Agreement and any other Plan documents (including an application for benefits) shall be final and binding on all affected Participants (and their beneficiaries).

# UNITED WIRE, METAL AND MACHINE PENSION PLAN

10 East 15th Street
New York, NY 10003
(212) 691-4100

## BOARD OF TRUSTEES

**Union Trustees**

Louis Smith

Steven G. Gilman

Pasquale Monaco

Donna Santoro

**Employer Trustees**

Burton K. Lewis

Howard Levy

Harvey Morgan

Robert Ziskin

## FUND ADMINISTRATOR

Steven G. Gilman

## COUNSEL

Proskauer, Rose LLP
1585 Broadway
New York, NY 10036-8299

## CONSULTANTS AND ACTUARIES

Savasta & Company, Inc.
One Dag Hammarskjold Plaza
20th Floor
New York, NY 10017

## AUDITOR

Salibello & Broder
810 Seventh Avenue
New York, NY 10019

---

# UNITED WIRE, METAL AND MACHINE PENSION PLAN
## SUMMARY PLAN DESCRIPTION

### TABLE OF CONTENTS

SUMMARY PLAN DESCRIPTION ... 2

STATEMENT OF ERISA RIGHTS ... 5

A SUMMARY OF YOUR PENSION PLAN ... 6

30 YEAR RETIREMENT PENSION ... 9

25 YEAR RETIREMENT AND REDUCED PENSION ... 10

EARLY RETIREMENT PENSION ... 11

DISABILITY PENSION ... 12

VESTED RETIREMENT BENEFIT ... 13

RECIPROCAL PENSION ... 14

SUPPLEMENTAL RETIREMENT ACCOUNT ... 16

THE FORM AND TIMING OF YOUR PENSION ... 17

DEATH BENEFITS ... 19

CLAIMS PROCEDURES AND PLAN ADMINISTRATION ... 21

## SUMMARY PLAN DESCRIPTION REQUIRED BY THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974

**Name of Plan**

United Wire, Metal and Machine Pension Plan

**Name and Address of Plan Sponsor**

Trustees of the United Wire, Metal and Machine Pension Fund, 10 East 15th Street, New York, NY 10003. A complete list of employers and employee organizations sponsoring the Plan may be obtained by participants and beneficiaries upon written request to the Plan Administrator and is available for examination by participants and beneficiaries.

**Employer Identification Number (EIN) of Plan Sponsor**

13-6596940

**Plan Number**

001

**Type of Pension Plan**

Defined benefit plan

**Type of Administration**

Trustee Administration

**Name, Business Address and Business Telephone Number of Plan Administrator**

Trustees of the United Wire, Metal and Machine Pension Fund
10 East 15th Street, New York, NY 10003
(212)-691-4100

**AGENT FOR SERVICE OF LEGAL PROCESS**

Trustees of the United Wire, Metal and Machine Pension Fund
10 East 15th Street, New York, N.Y. 10003
Attn: Administrator

2

## TITLE AND ADDRESS OF PRINCIPAL PLACE OF BUSINESS OF EACH TRUSTEE OF PLAN

Louis Smith
- President, Local 810 I.B.T.
10 East 15th Street
New York, New York 10003

Steven G. Gilman
- Administrator, United Wire Metal and Machine Pension Fund
10 East 15th Street
New York, New York 10003

Pasquale Monaco
- Local 810 I.B.T.
10 East 15th Street
New York, New York 10003

Donna Santoro
- Local 810 I.B.T.
10 East 15th Street
New York, New York 10003

Burton K. Lewis
- President
Brooklyn Steel Warehouse, Inc.
1819 Flushing Avenue
Flushing, New York 11385

Howard Levy
- President
Huntersspoint Steel Company
29-03 Huntersspoint Avenue
Long Island City, New York, 11101

Harvey Morgan
- President
S & S Industries, Inc.
385 Gerard Avenue
Bronx, New York 10451

Robert Ziskin
- Attorney
6268 Jericho Turnpike
Suite 12A
Commack, New York 11725

3

## Collective Bargaining Agreements

The Plan is maintained pursuant to a number of collective bargaining agreements. A copy of any such agreement may be obtained by participants and/or their beneficiaries upon written request of the Plan Administrator and is available for examination at the office of the Plan Administrator by participants and/or their beneficiaries.

## Pension Benefit Guaranty Corporation

Certain benefits under this plan are insured by the Pension Benefits Guaranty Corporation (PBGC) if the plan terminates. Generally, the PBGC guarantees most vested normal retirement age benefits, early retirement benefits, and certain disability and survivor's pensions. However, PBGC does not guarantee all types of benefits under covered plans, and the amount of benefit protection is subject to certain limitations.

The PBGC guarantees vested benefits at the level in effect on the date of plan termination. However, if a plan has been in effect less than five years before plan termination, or if benefits have been increased within the five years before plan termination, the whole amount of the plan's vested benefits or the benefit increase may not be guaranteed. In addition, there is a ceiling on the amount of monthly benefit that PBGC guarantees, which is adjusted periodically.

For more information on the PBGC insurance protection and its limitations, ask your Plan Administrator or the PBGC. Inquiries to the PBGC should be addressed to the Office of Communications, PBGC, 1200 K Street, N.W., Washington, D.C. 20005. The PBGC Office of Communications may also be reached by calling (202) 326-4040.

## Sources of Contributions to the Plan

Contributions are made to the Fund by Employers in accordance with the terms of the Collective Bargaining Agreements.

## Identity of Funding Medium Used for Accumulation of Assets Through Which Benefits Are Provided

Trustees of the United Wire Metal and Machine Pension Fund maintain a trust fund arising from employer contributions and investment income through which the Plan is funded and benefits are provided.

## Plan Year Ends - December 31.

## Procedures to Be Followed in Presenting Claims for Benefits Under the Plan and Remedies Available for Redress of Claims Which Are Denied in Whole or in Part

These procedures are described in detail on Pages 21-22 of the booklet under the headings "When should an application for benefits be filed?", "Who will decide whether or not a participant is eligible for a pension?", "When will I be notified of a decision?", "What is the claim review procedure available to me?"

## STATEMENT OF ERISA RIGHTS

As a participant in the United Wire Metal and Machine Pension Plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974. ERISA provides that all plan participants shall be entitled to:

1. Examine, without charge, at the plan administrator's office and at other specified locations (such as worksites and union halls), all plan documents, including insurance contracts, Collective Bargaining Agreements and copies of all documents filed by the plan with the U.S. Department of Labor, such as annual reports and plan descriptions.

2. Obtain copies of all plan documents and other plan information upon written request to the plan administrator. The administrator may make a reasonable charge for the copies.

3. Receive a summary of the plan's annual financial report. The plan administrator is required by law to furnish each participant with a copy of this summary financial report.

4. Obtain, once a year, a statement of the total pension benefits accrued and the nonforfeitable (vested) pension benefits (if any) or the earliest date on which benefits will become nonforfeitable (vested). The plan may require a written request for this statement, but it must provide the statement free of charge.

5. File suit in a federal court, if any materials requested are not receive within 30 days of the participant's request, unless the materials were not sent because of matters beyond the control of the administrator. The court may require the plan administrator to pay up to $110 for each day's delay until the materials are received.

In addition to creating rights for plan participants, ERISA imposes obligations upon the persons who are responsible for the operation of the employee benefit plan.

These persons are referred to as "fiduciaries" in the law. Fiduciaries must act solely in the interest of the plan participants and they must exercise prudence in the performance of their plan duties. Fiduciaries who violate ERISA may be removed and required to make good any losses they have caused the plan.

Your employer may not fire you or discriminate against you to prevent you from obtaining a pension benefit or exercising your rights under ERISA.

If you are improperly denied a pension benefit in full or in part, after having availed yourself of the internal claims procedures described on page 25, you have a right to file suit in a federal or a state court. If plan fiduciaries are misusing the plan's money, or if you are being discriminated against for asserting your rights, you have a right to file suit in a federal court or request assistance from the U.S. Department of Labor. If you are successful in your lawsuit, the court may, if it so decides, require the other party to pay your legal costs, including attorney's fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim to be frivolous.

If you have any questions about this statement of your rights under ERISA, you should contact the plan administrator or the nearest Area Office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

## A SUMMARY OF YOUR PENSION PLAN

### What is the Pension Plan?

The Pension Plan is one of the benefits provided for you under the collective bargaining agreement between your Employer and the Union.

### What pays for the Pension benefits?

The entire cost of the Plan is paid by the Contributing Employers in accordance with their Collective Bargaining Agreements with the Union. You are NOT required to pay any part of the cost.

### How do I become a Participant in the Plan?

If you are an employee working under the jurisdiction of Teamsters Local 810 or an Employer who is required to contribute to the Pension Fund on your behalf, you are covered by the Plan. You become a Participant in the Plan on the day a contribution is first required on your behalf.

### What is the Normal Retirement Age in the Plan?

The Normal Retirement Age is 65 with a minimum of five years of employer contributions to the Plan. The conditions which must be met to qualify for the various types of pension benefits provided by the Plan are described beginning on page 8.

6

### What is the Normal Retirement Date in the Plan?

The Normal Retirement Date is either the Normal Retirement Age (age 65) or the date which is the fifth anniversary of the time you commenced participation in the Plan, whichever is later.

### What is "Covered Employment" in the Plan?

Covered Employment means employment for which your Employer is obligated to contribute to the Fund under a Collective Bargaining Agreement with the Union. It may also mean employment by the Union, the Pension Fund and the United Wire, Metal and Machine Health and Welfare Fund, and employment within a bargaining unit prior to the time when the Employer first became obligated to contribute to the Pension Fund. For your employment to be "Covered Employment", the Trustees must accept your employer's participation in the Plan.

### What does it mean to be Fully Vested?

Generally, to be entitled to any benefit under the Plan, you must be Fully Vested on the earlier of:

(a) reaching Normal Retirement Date, or

(b) earning at least 10 years of Vesting Service. If you are covered under a Collective Bargaining Agreement, or at least 5 years of Vesting Service if you are not covered under a Collective Bargaining Agreement.*

### How do I earn Vesting Service and what is it used for?

Your Vesting Service is used to determine whether you are Fully Vested. You earn one year of Vesting Service for every year in which you work in Covered Employment for 1,000 or more hours in a year.

### How do I earn Credited Service and what is it used for?

You earn one year of Credited Service for every year in which you work in Covered Employment for 1,000 or more hours. You will receive pro-rated credit for any year in which you work between 501 and 999 hours. Credited Service is used to determine your vesting status and for the calculation of your pension benefit.

### Can I lose my Vesting Service or Credited Service?

No. Effective January 1, 1997 once you have earned Credited Service or Vesting Service it is yours forever. You cannot lose these credits for any reason. There is no longer a "Break in Service" provision in your Plan. This means that your credit cannot be taken away from you for any reason.

*Effective January 1, 1999 only 5 years of Vesting Service is required for all participants who have at least one hour of service on or after January 1, 1999.

7

any reason, including, for example, the following periods when you are not working in covered employment:

(a) periods of vacation and disability;

(b) military service;

(c) periods during which you would have worked in Covered Employment but for the fact that you were absent for maternity or paternity reasons;

(d) periods during which you are absent from Covered Employment on leave required to be provided under the Family and Medical Leave Act

## What types of Pension does the Plan provide?

There are **eight** types of pensions available to you. These various pensions are based on many factors such as your age at retirement, and the number of years of Credited Service you have accumulated. In addition, there is a Supplemental Retirement Account, which is explained on Page 16.

The various types of pensions provided by the Plan are as follows:

1. **A 30 YEAR RETIREMENT PENSION.** This is for employees who leave Covered Employment with at least 30 years of Credited Service regardless of age. At least 15 of the years of Credited Service must be from service during which your Employer has contributed to the Plan.

2. **A 25 YEAR RETIREMENT PENSION.** This is for employees who leave Covered Employment on or after reaching Normal Retirement Age (age 65) with at least 25 years of Credited Service, of which at least 10 years is from service during which your Employer has contributed to the Plan.

3. **A REDUCED PENSION (15-24 Years of Service Pension).** This is for employees who leave Covered Employment on or after reaching Normal Retirement Age (age 65) with at least 15-24 years of Credited Service, of which at least 10 years is from service during which your Employer has contributed to the Plan.

4. **AN EARLY RETIREMENT PENSION.** This is for employees who leave Covered Employment after reaching age 55 and who have at least 15 years of Credited Service, of which at least 10 years is from service during which your Employer has contributed to the Plan.

5. **A DISABILITY PENSION.** This is for employees who leave covered employment due to becoming totally and permanently

8

disabled (evidenced by the receipt of a Social Security Disability Award). Though there is no age requirement, after 1/1/95 you must have accumulated at least 10 years of service during which your Employer has contributed to the Plan.

6. **A VESTED RETIREMENT PENSION.** This is for employees who leave Covered Employment after 10 years of service (5 years of service for Participants who are not covered by a Collective Bargaining Agreement)** during which your Employer has contributed to the Plan, and who are not eligible for another type of pension.

7. **A RECIPROCAL PENSION.** This is for employees who earn a pension based on service earned in employment covered by both the United Wire, Metal and Machine Pension Plan and other pension plans provided for under Collective Bargaining Agreements between Local Union of the International Brotherhood of Teamster and employers, which are recognized by the Trustees for such purposes.

8. **A SUPPLEMENTAL RETIREMENT ACCOUNT.** This benefit was established as of January 1, 1991. You become fully vested in your Supplemental Retirement Account if you have earned at least three years of Vesting Service.

## Will my Social Security Benefits affect the benefits under this Plan?

No. You will receive your full benefits under this plan in addition to any benefits you may receive from Social Security.

## DESCRIPTIONS OF PENSION BENEFITS

## 30 YEAR RETIREMENT PENSION

### How do I qualify for a 30 Year Retirement Pension?

You are eligible to retire at any age on a 30 Year Retirement Pension if you leave Covered Employment after 12/1/96 having accumulated at least 30 years of Credited Service, at least 15 of which were earned from Employer contributions.

### How much is the 30 Year Retirement Pension?

The amount of your pension depends on the average weekly contribution rate paid by your Employer on your behalf during the last 10 years of your covered employment. This average benefit contribution rate is multiplied by $44 [the current benefit level] to determine your 30 Year Retirement Pension.

**Effective January 1, 1999 only 5 years of Vesting Service is required for all participants who have at least one hour of service on or after January 1, 1999.

9

Example (1): Suppose you have reached age 58, have 30 years of Credited Service, of which at least 15 years is from employer contributions and retire on December 31, 1997. Your employer contributed on your behalf the following benefit contribution rate during the last 10 years of your employment:

3 years @$30.00 =  90.00
4 years @$32.00 = 128.00
3 years @$34.00 = 102.00
$320.00/ 10 = $32.00 Average Benefit Contribution Rate

30 Year Retirement Pension = $32.00 X 44.00 = $1,408.00 per month

## 25 YEAR RETIREMENT AND REDUCED PENSION

### How do I qualify for a 25 Year Retirement or a Reduced Pension?

To qualify for either the 25 Year Retirement Pension or the Reduced Pension you must satisfy these conditions:

1. You must be at least age 65, and
2. You must have at least 10 years of Employer contributions made to the Plan on your behalf.
3. For the 25 Year Retirement Pension you need 25 years of total Credited Service.
   For a Reduced Pension you need 15 to 24 years of total Credited Service.

### How is my 25 Year Retirement or Reduced Pension calculated?

The amount or your pension payable at age 65 depends on the average weekly contribution rate paid by your employer on your behalf during the last 10 years of your covered employment.

This average contribution rate is multiplied by $44 (the current benefit level) to determine your 25 Year Retirement Pension. The Reduced Pension is pro-rated to the 25 Year Retirement Pension, based on your actual years of service (15 to 24 years).

Example (2): Suppose you have reached age 65, have 25 years of Credited Service and retire on December 31, 1997. Your Employer contributed on your behalf the following benefit contribution rate during the last 10 years of your employment:

3 years @$23.00 = $ 69.00
4 years @$25.00 = 100.00
3 years @$27.00 =  81.00
250.00/ 10 = $25.00 Average Benefit Contribution Rate

25 Year Retirement Pension = $25.00 X 44.00 = $1,100.00 per month

Example (3): Suppose the facts in Example (2) are the same except you have 20 years of service instead of 25 years. Since the 25 Year Retirement Pension is $1,100.00, the Reduced Pension is 20/25 of $1,100.00 or $880.00 per month.

### Can I determine my pension based on the Average Benefit Contribution Rate?

Yes. The table below shows the monthly benefits payable at age 65 at various contribution rates:

Illustrative Monthly Pension at Age 65

| Average Benefit Contribution Rate | 25-Year Service Pension | 20-Year Service Pension | 15-Year Service Pension |
|---|---|---|---|
| $55.00 | $2,420 | $1,936 | $1,452 |
| 50.00 | 2,200 | 1,760 | 1,320 |
| 45.00 | 1,980 | 1,584 | 1,188 |
| 40.00 | 1,760 | 1,408 | 1,056 |
| 35.00 | 1,540 | 1,232 | 924 |
| 30.00 | 1,320 | 1,056 | 792 |
| 25.00 | 1,100 | 880 | 660 |
| 20.00 | 880 | 704 | 528 |
| 15.00 | 660 | 528 | 396 |
| 10.00 | 440 | 352 | 264 |
| 5.00 | 220 | 176 | 132 |

### Will I receive my pension benefit at age 65 if I continue to work?

No. You cannot receive your pension unless you terminate employment and submit a retirement application to the Fund. However, as discussed below, if you terminate employment, you must begin to receive your pension benefit beginning on April 1st following the calendar year in which you attain age 70 1/2.

## EARLY RETIREMENT PENSION

### Suppose I have less than 25 years of service. Can I retire before age 65?

You can retire on an Early Retirement Pension if you meet the following conditions:

(a) You are at least 55.
(b) You have accumulated at least 15 years of credited service.
(c) You have had at least 10 years of Employer contributions made to the Plan on your behalf.

## How is the Early Retirement Pension calculated?

The Early Retirement Pension is calculated in the same way as the pensions payable at 65, but is reduced because you are retiring at a younger age and you will be receiving benefits over a longer period of time. Effective July 1, 1997 the benefit payable at 65 is reduced by 3% for each year (.25% for each month) by which you are younger than 65.

The following table shows the percentage of the age 65 benefit which you would receive as the Early Retirement Benefit.

| Early Retirement Age | Percentage of Normal Age 65 Benefit |
|---|---|
| 64 | 97% |
| 63 | 94 |
| 62 | 91 |
| 61 | 88 |
| 60 | 85 |
| 59 | 82 |
| 58 | 79 |
| 57 | 76 |
| 56 | 73 |
| 55 | 70 |

Example [4]: Suppose you have 20 years of service instead of 25 years and that your average benefit contribution rate is $25.00 just like in Example [3], except that you wish to retire at age 60 instead of your normal retirement at age 65. The Reduced Pension is $880.00 per month, payable at age 65. The Early Retirement Factor at age 60 is 85% of the age 65 benefit. Therefore, your monthly pension at age 60 is $880 x 85% which amounts to $748.00 per month payable at age 60.

## DISABILITY PENSION

### When am I eligible for a Disability Pension?

You are eligible to retire on a Disability Pension if you become totally and permanently disabled while in covered employment and receive a Disability Award from the Social Security Administration stating your disability began on or after 1/1/95. Though there is no age requirement, you must have accumulated at least 10 years of Credited Service from Employer contributions. If your disability began before 1/1/95, you must have completed not less than 15 years of Credited Service, at least 10 of which were earned from Employer contributions.

You will be considered to have a "total and permanent disability" only if the Trustees determine in their sole and absolute discretion that based on the medical evidence submitted you have a medically determinable impairment which prevents you from engaging in Covered Employment and provided that you do not earn more than $1,200 in any other kind of employment.

12

## Can an employee's own doctor certify that he is totally and permanently disabled?

No. An employee who applies for a Disability Pension will be asked to have an examination by a physician selected by the Board of Trustees and will be required to submit to periodic reexaminations as the Trustees may direct.

### How is the Disability Benefit calculated?

The Disability Pension is calculated in the same way as the 25 Year Retirement Pension or Reduced Pension with no reduction for retirement prior to age 65. The benefit will be paid from the seventh month following the start of your disability (as indicated on your Social Security Disability Award Notice) and subject to your filing a timely application with the Fund.

### If a disability pensioner recovers from the disability, can he go back to work in Covered Employment?

Yes. Of course the Disability Pension will stop, but the employee will again begin accumulating credit towards a pension.

## VESTED RETIREMENT BENEFIT

### What is the Vested Retirement Benefit?

If you accumulate 10 Years of Credited Service for Vesting (5 years of Credited Service for Vesting if you are not covered under a Collective Bargaining Agreement) *** or you have reached your Normal Retirement Date , and if you do not qualify for any other benefit under the Plan, you are eligible for a Vested Retirement Benefit when you reach age 65.

The amount of the Vested Retirement Benefit is equal to 3% of the 25 Year Retirement Benefit for your average contribution rate multiplied by years of Credited Service earned from contributions paid to the Fund.

Example [5]: Suppose you terminate your employment at age 40 and you have earned 10 years of Credited Service during which contributions were made to the Fund on your behalf. Your average weekly contribution rate during the 10 years prior to your termination was $30.00. The amount of your Vested Retirement Benefit payable at age 65 is calculated as follows:

3% of $44 = $1.32
$1.32 x $30.00 x 10 years = $396.00 per month  payable for life.

***Effective January 1, 1999 only 5 years of Vesting Service is required for all participants who have at least one hour of service on or after January 1, 1999.

13

If you terminate covered employment before age 55 with at least 15 years of Credited Service including at least 10 years of contributions, you are eligible to elect to receive your Pension at an Early Retirement Age of 55 to 64. The Early Retirement Pension will be equal to the Vested Retirement Benefit payable at age 65, reduced by 3% for each year by which you are younger than 65 when your Pension begins.

Example (6): Suppose the facts in Example (5) are the same except you have earned 15 years of Credited Service (including at least 10 years of contributions by your Employer). When you reach age 55, you are eligible for an Early Retirement Pension calculated as follows:

3% of $44.00 = $1.32
$1.32 x $330.00 x 15 = $594.00

The Vested Retirement Benefit is $594.00 per month payable at age 65. The Early Retirement factor at age 55 is 70% of the benefit received at age 65. Therefore, your monthly pension benefit at age 55 is $594.00 x 70% which amounts to $415.80 per month, payable for life.

## RECIPROCAL PENSION

### What is the purpose of the Reciprocal Pension?

The Reciprocal or Pro-Rata Pension is provided under this Plan for those whose years of employment were divided between service under this Plan and other related Plans and who would therefore lack sufficient credit to be eligible for any pension or, who would, as a result, be eligible for a lesser pension. In these cases, as described below, pension credits for service under both the United Metal Wire and Machine Pension Plan and related plans may be counted for purposes of eligibility under the United Wire, Metal and Machine Pension Plan.

### When is an employee eligible for a Reciprocal Pension?

If the Trustees recognize another pension plan as a "Related Plan" (and the Plan has entered into a Reciprocity Agreement with the other pension plan), credit earned under that plan will be added to the employee's Credited Service under the United Wire, Metal and Machine Pension Plan to produce "Combined Service Credit." (No more that one year of Combined Service will be given for each calendar year.) A Participant will be eligible for a Pro-Rata pension if he or she meets all of the following requirements:

1. The Participant would have been eligible for a Pension from this Plan if his or her Combined Service Credit were treated as Credited Service under this Plan; and

2. The Participant has at least 2 years of Credited Service in each plan based on actual employment after becoming a Participant in the Fund; and

3. The Participant is eligible for a partial pension (and no other

type of pension) from a Related Plan. (However, if the employee is entitled to a Pension other than a Partial Pension from this Plan or a Related Plan, he or she may elect to waive that pension).

4. The Participant is eligible for a partial pension from the plan of the local union that represents the employee at the time of his or her retirement. (If, at that time, the employee was not represented by any one local, the employee must be eligible for a partial pension from the plan to which the bulk of contributions were paid on his or her behalf during the 36 months preceding retirement); and

5. A pension, other than a Pro-Rata Pension, is not payable to the employee from a Related Plan.

### How much is the Reciprocal Pension?

The Reciprocal Pension amount is determined as follows:

1. The employee's Combined Service Credit is determined by adding his or her Credited Service under the Plan plus his or her service under the Related Plan. A pension amount (based on the benefit schedules in effect at the date of termination of employment under the United Wire, Metal and Machine Pension Plan) is determined as if all Combined Service Credit was earned under this Plan.

2. Determine the Pension Percentage by the following formula.

$$\frac{A}{B}$$

where "A" equals the number of years of Credited Service under this Plan and "B" equals the total years of Combined Service Credit earned.

3. Multiply the Pension Percentage by the pension amount determined in 1. above.

Example: Suppose an employee aged 65, worked under a Related Plan for 14 years beginning January 1, 1955. Then suppose the employee worked for 11 years under the jurisdiction of the United Wire, Metal and Machine Pension Plan earning 11 years of Credited Service. The employee then applied for a Pro-Rata Pension.

If the employee was not eligible for a regular pension under the Related Plan or has waived that regular pension, his or her Pro-Rata Pension under this Plan would be determined as follows:

1. The employee's Combined Service Credits under both plans would be 25. Under the United Wire, Metal and Machine Pension Plan assume that these credits would entitle the employee to a 25 Year Retirement Benefit of $1,500 if he retired on January 1, 1997.

2. In order to determine what portion of the pension would be paid by the United Wire, Metal and Machine Pension Plan and what part would be paid by the Related Plan the following would be done:

   a. The years of Credited Service for this employee under our Plan since January 1, 1955 would be 11.

   Hence, "A" would equal 11. Similarly, because the total years of pension credit under the Related Plan since January 1, 1955 is 14, the employee's Combined Service Credit is 25.

   b. The part of the Pro-Rata Pension paid by this Plan would be computed as follows:

   $$\text{Total Pension Amount} \times \frac{A}{B} = \text{Monthly Pro-Rata}$$

   $$\text{Pension} \quad \$1,500 \times \frac{11}{25} = \$660$$

   c. The employee would then receive a Pro-Rata Pension of $660 from this Plan.

   d. The employee should also receive from the Related Plan a Pro-Rata Pension based on 25 years of service.

## SUPPLEMENTAL RETIREMENT ACCOUNT

### What is the Supplemental Retirement Account?

The Supplemental Retirement Account is a separate account established as of January 1, 1991 for each participant of the Plan. Your account will be credited with twenty percent (20%) of the amount contributed on your behalf on or after January 1, 1991. Therefore, the amount allocated to your account is directly related to the amount your Employer contributes for you under his applicable Collective Bargaining Agreement with the Union.

### How do I become eligible for this benefit?

There is no service requirement for eligibility to participate. You become a Participant when a contribution is made for you by your Employer to the Fund. You become fully vested in your Supplemental Retirement Account if you have earned at least three (3) years of Vesting Service.

### How is the Supplemental Retirement Account paid to me?

The balance in your Supplemental Retirement Account will be paid to you when you retire under the Pension Plan. If you terminate your Covered Employment before you become eligible for an immediate

16

pension benefit, you will be able to receive the vested balance in your Supplemental Retirement Account six months after your Covered Employment terminates.

In the event of your death before distribution of this account, your designated beneficiary will receive the vested balance at the time of your death. If you are married and you designate a beneficiary other than your spouse, your spouse must consent in writing to that designation.

## THE FORM AND TIMING OF YOUR PENSION

### How will my pension be paid?

If you are not married: If you are not married, or if you and your spouse reject the Qualified Joint and Survivor Annuity, your pension will be paid as a "36 Certain Pension," that is, a pension payable to the Participant for life with 36 months of guaranteed payments. What this guarantee means is that if you die before receiving 36 monthly payments, then your designated beneficiary will receive the remainder of the 36 payments.

If you are married: Unless you elect otherwise in accordance with the terms of the Plan as described below, as a married participant, your benefit will be paid as a 50% Qualified Joint and Survivor Annuity, sometimes called a 50% QJSA. This means that the pension otherwise payable to you will be reduced in order to provide a benefit to your spouse following your death that is 1/2 of the benefit paid to you. For the 50% QJSA the amount of the reduction in your pension depends upon your age and the difference in age between you and your spouse.

Waiver of the 50% QJSA: You should be aware that your benefits will automatically be paid in the form of a 50% QJSA unless you and your spouse reject this type of benefit. Your spouse must consent to the rejection of the 50% QJSA in writing and to any beneficiary you designate. Your rejection and your spouse's consent must be witnessed by a notary public or Plan representative between 30 and 90 days of the commencement of your pension. Therefore, generally you have at least a 30-day election period after being given a written explanation of the 50% QJSA to waive this benefit with your spouse's consent. However, effective January 1, 1997, you may elect to waive, with your spouse's consent, the requirement that this explanation be provided to you within 30 days of your Annuity Starting Date, as long as you receive the explanation more than 7 days before your Annuity Starting Date. The 50% QJSA may be waived if you demonstrate to the Plan that you cannot locate your spouse after diligent efforts.

Small Pensions: Prior to the Plan Year beginning January 1, 1998, if the monthly pension benefit payable to you, or your surviving spouse, or your beneficiary has an actuarially determined value of less than $3,500 it will be automatically paid out in a lump sum. Effective on and after the Plan Year beginning January 1, 1998, if your monthly pension benefit payable to you, or your surviving spouse, or your ben-

17

eficiary has an actuarially determined value of less than $5,000 it will be automatically paid out in a lump sum.

## When will my benefits begin?

Payment of your benefits will generally begin on the first day of the month following the month in which you meet all eligibility requirements for a pension, including the filing of an application on forms provided by the Fund Office. If you don't file an application, you will be deemed to have decided to delay the commencement of your benefit. If you have not applied for your benefit by April 1st of the the year following the year in which you turn age 70 1/2, the Plan will be required to distribute a portion of your pension to you.

Effective January 1, 1997, a Participant must begin receiving his or her pension in the year following the year in which the Participant reaches age 70 1/2 or retires, whichever is later. (Different rules may apply to those Participants who reach age 70 1/2 before January 1, 1997 and to those Participants who are 5% owners of their employer.)

## DEATH BENEFITS

### What happens if I die after I begin receiving my pension?

If you retired on a 50% QJSA, your spouse will receive for his or her life a monthly benefit that is 50% of the monthly benefit you received. If you waived the QJSA in favor of a 36 Certain pension, your beneficiary will receive no benefit on your death. (If he or she is the beneficiary under the 36 Certain pension, he or she may be eligible for the death benefit described in the next paragraph.)

If you retired on a 36 Certain pension and did not receive all 36 monthly payments by the time you died, your beneficiary will receive the remainder of the 36 payments.

### What happens if a participant dies before his pension begins?

If you are married: If you die before you begin receiving a pension but are vested, your spouse is eligible to receive a Qualified Pre-Retirement Survivor Annuity (a QPSA) if you were married for at least one year preceding your death. The QPSA is calculated differently depending upon whether you die before or after you become eligible for a pension.

(a) If you die after you become eligible for a pension, your spouse will receive the same benefit that would have been paid to him or her had you retired on a 50% QJSA on the day before your died.

EXAMPLE: If you die on April 1, but would have been entitled to a 50% QJSA of $1,000 had you retired on March 31, your spouse will receive a life annuity of $500 on your death.

## SUMMARY OF PLAN BENEFITS

| Type of Pension | Eligibility Requirements | Pension Amount |
|---|---|---|
| 30 Year | • No age requirement<br>• 30 years of service (at least 15 years of contributions)<br>• Terminate covered employment after 12/1/96 | • $44 x Average 10 year Contribution Rate<br>• Maximum years of service = 25 |
| Normal (25 Year) | • Age 65<br>• 25 years of service (at least 10 years of contributions) | • $44 x Average 10 year Contribution Rate<br>• Maximum years of service = 25 |
| Reduced | • Age 65<br>• 15-24 years of service (at least 10 years of contributions) | • $44 x Average 10 year Contribution Rate x years of service/25 |
| Early | • Age 55<br>• 15 years of service (at least 10 years of contributions) | • $44 x Average 10 year Contribution Rate x Years of service/25 & reduced by 3% [effective 7/1/97] for each year less than age 65 |
| Disability | • No age requirement<br>• 10 years (15 years prior to 1/1/95) of contributory service<br>• Social Security Disability Award<br>• Must be in covered employment | • Same as Normal Pension |
| Vested | • Age 65<br>• 10-14 years of contributory service | • (3% x $44) Average 10 year Contribution Rate x years of credited service |

*This chart does not reflect all pension benefits offered. Please refer to the summary plan description for a more detailed explanation of benefits.

(b) If you die before you become eligible for a pension, your spouse will receive the same benefit that would have been payable if you had:

a. Separated from service on the date of death;
b. Survived until you were eligible for a pension;
c. Retired with an immediate 50% QJSA at the time you became eligible; and
d. Died on the day after you became eligible for a pension.

Your spouse's QPSA will begin the month following the later of your death or the date you would have first become eligible for a pension. Your spouse may postpone the start of his or her QPSA until a later date, but not later than the date you would have reached Normal Retirement Age (generally 65).

You may waive the QPSA after you reach age 34 if you make an election to do so with your spouse's consent. The Fund Office can provide the necessary forms. If you have waived the QPSA, no benefit will be payable to your spouse on your death.

If you are not married or have waived the QPSA. If you are not married (or have waived the QPSA) and die after you become vested but before your pension begins, your beneficiary will receive a Survivor Benefit of 36 monthly payments in the amount you would have been eligible to receive if you had retired immediately prior to your death.

What is the "Lump Sum" Death Benefit for retirees?

A "Lump Sum" death benefit is provided for all Pensioners. The amount of the death benefit is based upon the amount of the Participant's monthly pension. A "Pensioner" shall mean only the retired member (not a surviving spouse or beneficiary) receiving pension benefit payments. The death benefit will be paid pursuant to the following schedule:

| Pension Amount | Death Benefit |
| --- | --- |
| $ 0.00 to $100.50 | $1,500.00 |
| 101.00 to 200.50 | 2,500.00 |
| 201.00 and above | 3,500.00 |

The payment is to be made to the Pensioner's spouse, unless such spouse consents to payment to another beneficiary designated by the Participant and filed with the Fund office. If the named beneficiary predeceases the Pensioner, payment will be made to the following people in order of priority:

Payment should be made to the spouse if the named beneficiary or alternate is deceased or if no individual has been named. Then, if the spouse is deceased, to the children of the deceased. If there are no children, to any brother or sister of the deceased. If none of the above exists, to the estate of the deceased. If more than one individual is eligible for payment, payment will be made in equal shares.

20

Can an employee continue to receive a pension from this Fund while working?

If an employee retires and receives a pension, under certain circumstances, his or her pension will be suspended in accordance with legal rules governing suspensions. Briefly, an employee's pension will be suspended if (1) he or she is reemployed in the same industry in which employees covered by the Plan were employed at the time he retired, in the trade or craft in which he or she was employed, and in the geographic area covered by the plan at the time the employee retired; AND (2) either works for 40 hours or more per month or works on each of 8 or more days in a month. At the request of the Board, a Participant receiving a pension may be required to submit from time to time a sworn statement of his or her employment status, including a statement and/or factual information sufficient to establish that he or she is not working in Covered Employment in excess of the Plan's minimum number of hours. If such statement is not submitted within 60 days after a request is mailed to the Participant, the Board may, unless it is unreasonable under the circumstances to do so, act on the basis of a rebuttable presumption that you have worked a period exceeding the minimum number of hours for that month in Covered Employment, and all future retirement benefits shall be temporarily suspended until such statement is submitted and approved by the Board.

You will be notified of the suspension during the first calendar month for which benefits are suspended. If you have received benefits that should have been suspended, these amounts may be offset against benefits later paid to you.

Will I receive Social Security Benefits in addition to those provided under this Plan?

Yes. The benefits provided by this Plan are in addition to anything you are entitled to receive under the Social Security benefits law.

## CLAIMS PROCEDURES AND PLAN ADMINISTRATION

When should an application for benefits be filed?

An application for benefits should be filed approximately 6 months prior to the date all eligibility requirements will be met and in advance of the first month for which the Participant wishes benefits to be payable. The application must be presented on a form furnished by the Pension Fund office. This will enable the Trustees to process the application and be ready to pay benefits promptly.

Who will decide whether or not a Participant is eligible for a pension?

The Board of Trustees will decide if the applicant meets all requirements as set forth in the rules and regulations of the Pension Plan. The Board of Trustees has the right to request whatever documentary evidence

21

from the applicant is required in order to decide the merits of the particular application.

## When will I be notified of a decision?

Within 30 days after receipt of any claim for benefits, the Administrator will notify you, in writing, of the action taken on your claim. If the claim is denied in whole or in part, the Administrator will set forth in the written notice the specific reasons for such denial, specific references to the Plan provisions on which the denial is based, a description of any additional material necessary for you to perfect your claim, an explanation of why such material is necessary, and an explanation of the Plan's claim review procedure. The Administrator will also notify you of your rights to appeal such denial.

## What is the claim review procedure available to me?

Within 60 days after receipt of notice that your claim has been denied, in whole or in part, you or your duly authorized representative, may file a written request of a review of your claim by the full Board of Trustees. Such request must set forth the basis for the appeal and all pertinent data to substantiate your position. In connection with the appeal, you or your representative, shall be given an opportunity to inspect copies of pertinent documents and to review the information upon which the denial was based. The Board of Trustees, in its discretion, may hold a full hearing of the issues presented by you.

A decision on review shall be made no later than the date of the meeting of the Board of Trustees that immediately follows the Plan's receipt of a request for review, unless the request is filed within 30 days preceding the meeting. In that case, a decision shall be made by no later than the date of the second meeting following the Plan's receipt of the request. If special circumstances require a further extension of time for processing, the Participant shall be notified of the need for an extension and the decision shall be rendered not later than the third meeting of the Board of Trustees following the Plan's receipt of the request for review.

## Can pension benefits be assigned, mortgaged or pledged?

No. This is prohibited by the terms of the Plan and applicable law. Unless a Pensioner is unable to care for his or her own affairs because of illness or accident or incapacity, all pension benefits must be made directly to him or her. There is, however, a limited exception to this prohibition for assignment of all or part of a Plan participant's pension benefit to an ex-spouse, child, or other dependent of the Participant made pursuant to a qualified domestic relations order ("QDRO").

## What is a qualified domestic relations order?

Although you generally may not assign your retirement benefits under the Plan to another person, your benefits may be assigned in accordance with a domestic relations order meeting certain requirements.

Federal law requires that this kind of order, called a "qualified domestic relations order" or "QDRO," meet the following requirements before the Plan may recognize it and pay benefits based on it:

a.  the order must be issued by a state or local court with jurisdiction over domestic relations matters;

b.  the order must clearly identify the Plan and the parties involved;

c.  the order must be specific as to the division of benefits; and

d.  the order may not require the Plan to pay benefits in a form not available under the Plan or in an amount greater than that to which the Participant is entitled, or to pay benefits already assigned under a previous QDRO.

If you are involved in a domestic relations action and a portion of your retirement benefits will be awarded to your spouse, former spouse, child or other dependent, contact the Fund Office for more information on the procedures for obtaining a QDRO.

## How is the Pension Fund administered?

The Fund is administered by the Board of Trustees consisting of four representatives of the participating Employers and four representatives of the Union. The Board of Trustees has the authority to decide all matters concerning the interpretation and application of the Pension rules and regulations, and its decision on these matters is final and binding.

## Do the Trustees have the discretion to interpret the Plan?

Yes.



These questions and answers are only brief explanations of the more important provisions of the Plan. Governmental regulations control in determining the rights of any member of the Plan, and nothing in this explanation is intended to change the regulations. Further information may be secured by making inquiries to the Fund Office.

24